# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| **RYAN OWEN SEYMOUR,** | |
| **Plaintiff,** | |
| v. | Case No. 12-2282 |
| **CAROLYN W. COLVIN,**[1] **Acting Commissioner of Social Security,** | |
| **Defendant.** | |

## REPORT AND RECOMMENDATION

In March 2011, Administrative Law Judge David Thompson denied Plaintiff Ryan Seymour's applications for social security disability insurance benefits and supplemental security income. ALJ Thompson based his decision on his finding that Plaintiff was not disabled and was able to perform jobs that are available in the national and regional economy.

This decision became the final decision of the Commissioner of Social Security and in October 2012, Plaintiff filed a Complaint (#1) against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny benefits. In May 2013, Plaintiff filed a Motion for Summary Judgment (#15). In June 2013, the Commissioner filed a Motion for An Order Which Affirms The Commissioner's Decision (#17). Plaintiff subsequently filed a Motion for Leave to File a Reply Memorandum (#18), which the Court treated as a reply. After reviewing the administrative record and the parties' memoranda, this Court recommends that Plaintiff's Motion for Summary Judgment (**#15**) be **GRANTED** and that the Commissioner's Motion for An Order Which Affirms the Commissioner's Decision (**#17**) be **DENIED**.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, the Acting Commissioner of Social Security, is substituted for Michael Astrue as the defendant in this suit. FED R. CIV. P. 25(d).

# I. Background

## A. Procedural Background

In September 2008, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging an onset date of July 31, 2005. Plaintiff's applications were denied initially and upon reconsideration. In May 2009, ALJ Thompson held a hearing at which Plaintiff, Plaintiff's father, and Chrisann Schiro Geist, a vocational expert, testified. Plaintiff was represented by counsel at the hearing. In March 2011, the ALJ issued an unfavorable decision, finding Plaintiff not disabled under the Social Security Act and denying him benefits. The Appeals Council denied review and Plaintiff filed his complaint in the district court, seeking review pursuant to 42 U.S.C. § 405(g).

## B. Medical Background

The ALJ found that Plaintiff has severe impairments including degenerative disc disease, obesity, and anxiety. The ALJ acknowledged that Plaintiff has been diagnosed and treated for depression in the past and noted it as an existing but nonsevere impairment. Both parties are familiar with Plaintiff's medical background, and the Court will not repeat it here.

## C. The ALJ's Decision

The ALJ followed the five-step procedure for assessing disability. At step one, he determined that Plaintiff had not engaged in substantial gainful activity since July 31, 2005. At step two, he determined that Plaintiff has severe impairments of degenerative disc disease, obesity, and anxiety; however, his depression was nonsevere. At step three, the ALJ determined that Plaintiff's impairments do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Plaintiff has the RFC to perform work at a sedentary exertional level. Due to his degenerative disc disease and obesity, the ALJ limited him to work that allows him to sit and/or stand at will. The ALJ further limited Plaintiff to only occasional stooping, crouching, and crawling, and no climbing of ladders, ropes, or scaffolds. He must avoid concentrated exposure to unprotected heights. Because of his anxiety, he requires jobs with little change in job process, and with only occasional contact with the public, coworkers, and supervisors. At step four, the ALJ determined that Plaintiff was unable to

perform any past relevant work. At step five, the ALJ concluded that Plaintiff was not disabled and was able to perform jobs that are available in the national and regional economy.

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether a plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. Discussion

Plaintiff argues that the ALJ's decision should be reversed because (1) the ALJ's decision contained confusing and misplaced explanations of the applicable legal standards; (2) the ALJ failed to assess properly the treating physicians' opinions; (3) the ALJ did not appropriately assess the State Agency reviewing expert's opinion of Plaintiff's social limitations; (4) the ALJ failed to resolve an obvious conflict between the vocational expert (VE) testimony and the *Dictionary of Occupational Titles*; and (5) the ALJ's credibility assessment contained numerous errors.

### A. The Applicable Legal Standard

Plaintiff argues that the ALJ failed to focus on the correct legal standards because he referred to the standard applicable to judicial review of an ALJ's decision rather than the standard the ALJ must use when determining benefit eligibility. Plaintiff acknowledges a recent decision, *Linneman v. Astrue*, No. 11 C 1389 (C.D. Ill. Dec. 6, 2012), in which the district court stated that referring to the wrong standard, although confusing, does not constitute reversible error. Nevertheless, Plaintiff contends that the ALJ's error here is more significant because he made other legal errors.

The Court disagrees.  The language regarding legal standards to which Plaintiff refers is found in the ALJ's introductory material.  There is no indication that the ALJ did not know and apply the preponderance of the evidence standard when determining benefits.  *See* 20 C.F.R. § 416.1453(a).  The Court suggests that the ALJ clarify this section to refer to the appropriate standard.  Nevertheless, the Court will not reverse the decision on the sole ground that the ALJ included language regarding the standard for judicial review and did not state the evidentiary standard of preponderance of the evidence.

### B.  Treating Doctors' Opinions

Plaintiff argues that the ALJ erred when assessing the opinions of Dr. Runde, Plaintiff's treating physician, Dr. Lee, Plaintiff's treating psychiatrist, and Mr. Hunter, Plaintiff's counselor. According to Social Security Regulations, the ALJ will give controlling weight to a treating physician's opinion if the opinion (1) is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  If the treating source's opinion does not merit controlling weight, then the ALJ will consider the factors listed in the Regulations and will explain the reasons for the weight given to the opinion.  20 C.F.R. § 404.1527(c).

### 1.  Dr. Lee's Opinions

Because the ALJ's assessment of Dr. Lee's records and opinions constitutes reversible error, the Court will address this issue first.

Plaintiff consulted with Dr. Lee beginning in September 2008 until at least October 2010. Dr. Lee completed a mental functional capacity report in August 2010, stating that Plaintiff had depressive disorder and social anxiety disorder with marked limitations in activities of daily living; social functioning; and concentration, persistence and pace since January 1, 2008.  Dr. Lee also opined that Plaintiff had experienced four or more episodes of decompensation[2] in the last twelve months and that he would miss work more than three days a month.

---

[2] The Listing defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in

The ALJ gave two reasons for declining to rely on Dr. Lee's opinions. First, he stated that the doctor's mental functional capacity report contradicted his consistent finding that Plaintiff did not have a depressive disorder after September 2009. (R. 31.) According to the ALJ, by October 2008, Dr. Lee had taken Plaintiff off of all anti-depressant medication and observed that he was euthymic. The ALJ stated that Dr. Lee reported no major change overall after that date, and never altered the prescribed treatment of no medication. (R. 26-27.) The ALJ concluded that Dr. Lee's reports indicated Plaintiff no longer suffered from depression after September 2009.

After reviewing Dr. Lee's progress notes, the Court finds that the ALJ was incorrect in concluding that the mental functional capacity report "contradicted [Dr. Lee's] consistent finding that the claimant did not have a depressive disorder after September of 2009." (R. 31.) On November 9, 2009, Dr. Lee's diagnoses listed 311, depressive disorder not otherwise specified, as well as 300.01, panic disorder without agoraphobia, and 300.23, social phobia. While it is accurate to say that Dr. Lee's treatment notes after November 9, 2009, stated that there was "no major change" in Plaintiff's condition, the notes also state that Axis 1 is "as before," that is, the same diagnoses, including 311, depressive disorder. Furthermore, most of Dr. Lee's treatment notes indicate that Plaintiff's mood is depressed or slightly depressed.[3] In addition, if the ALJ assumed that Plaintiff was no longer depressed because Dr. Lee took him off anti-depressant medication, that assumption is unfounded. Dr. Lee's notes expressly stated in September 2008

---

performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00; *see also Zabala v. Astrue,* 595 F.3d 402, 405 (2d Cir. 2010) (stating that decompensation is a temporary increase in symptoms).

> An incident—such as hospitalization or placement in a halfway house—that signals the need for a more structured psychological support system would qualify as an episode of decompensation, but so would many other scenarios. The listing recognizes that an episode may be inferred from medical records showing a significant alteration in medication.

*Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00).

[3] The Court notes that the treatment notes between September 4, 2008, September 18, 2008, and November 9, 2009, March 30, 2010, June 10, 2010, and October 11, 2010, all indicate that Plaintiff's mood was depressed. The reports dated October 2, 2008, and August 10, 2010, list his mood as euthymic.

5

that the anti-depressants cause psychosis. (R. 487.) Accordingly, the ALJ erred when he determined that Dr. Lee had consistently found that Plaintiff did not have a depressive disorder after September 2009. Thus, on this issue, the mental functional capacity report did not contradict Dr. Lee's treatment notes.

Second, the ALJ stated that Dr. Lee's opinion was not supported by objective medical evidence and was inconsistent with other substantial evidence of record. The ALJ referred specifically to Dr. Lee's description of Plaintiff as euthymic and stable. The Court has already noted that the fact Dr. Lee noted "no major change" did not indicate Plaintiff no longer suffered from depression. The ALJ did not explain what evidence other than Dr. Lee's treatment records he found inconsistent. Therefore, this reason does not support the ALJ's conclusion.

Finally, the ALJ questioned how Dr. Lee could conclude that Plaintiff's limitations existed as of January 1, 2008, when Dr. Lee did not begin treating Plaintiff until September 2008. Although this may affect the onset date, it does not address the reliability of Dr. Lee's August 2010 mental functional capacity report.

Based on the above, the Court concludes that the ALJ's reasons for finding Dr. Lee's opinions unreliable are not supported by substantial evidence. Moreover, it is clear that the ALJ's misunderstanding of Dr. Lee's reports influenced his consideration of Plaintiff's depression, as evidenced by the ALJ's statement that, "given the reticence of [Dr. Lee] to note its existence [i.e., depression] in the course of regular treatment, the undersigned finds that depression does not impact the claimant's functioning more than minimally." (R. 23.) Under the circumstances, therefore, the ALJ's misreading of Dr. Lee's records is not harmless and the case must be remanded so that the ALJ can reconsider the severity of Plaintiff's depression.

## 2. Dr. Runde's Opinions
### a. November 2008 and November 2010 letters

Dr. Runde's November 2008 letter described Plaintiff's diagnoses of and treatment for congenital degenerative scoliosis and generalized anxiety disorder with panic attacks, and noted that Plaintiff may have "flare ups" that require additional medication. Dr. Runde opined that

"[t]hese conditions affect [Plaintiff's] employability." (R. 914.) The ALJ gave no weight to the November 2008 letter, explaining that the letter did not "state with any specificity that the claimant has a disability, or in what manner his impairments affect his ability to be employed." (R. 30.)

In his November 2010 letter, Dr. Runde stated that Plaintiff has "severe spinal scoliosis which has led to a chronic pain syndrome and chronic anxiety and depression." (R. 936.) Dr. Runde described his treatment of Plaintiff since 2006, including physical therapy, counseling, and medication, which Dr. Runde stated Plaintiff could not tolerate due to side effects. Dr. Runde stated that he had informed Plaintiff that his chronic pain is incurable, the medications he was taking were addictive, and that increasing those medications will lead to increased pain, anxiety, and depression. The doctor noted that Plaintiff has successfully reduced his medication dosages. Dr. Runde also opined that Plaintiff is "chronically disabled due to these problems," that he has already received "maximal treatment," and that "[v]irtually any type of employment would increase his chronic pain and anxiety." (R. 936.)

Regarding the November 2010 letter, the ALJ stated that this letter "made very general statements that the claimant's treatment was ineffective to alleviate the pain, and because the claimant was incurable, he was disabled." The ALJ also stated that the conclusions in the letter were not supported by a "suitable medical opinion." (R. 30.)

The Regulations provide that the issue of disability is "reserved to the Commissioner" and a statement "by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."[4] *See* 20 C.F.R. § 404.1527(c)(1). A diagnosis

---

[4] Plaintiff cites *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), for the proposition that "an opinion that a claimant cannot perform sedentary work constitutes an important medical opinion which must be properly considered." (#16, p. 10.) That characterization overstates the Seventh Circuit's position in *Bjornson*. In that case, the court discussed the significance of 20 C.F.R. § 404.1527(c)(1), stating as follows:
> The pertinent regulation says that "a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). That's not the same thing as saying that such a statement is improper and therefore to be ignored, as is further made clear when the regulation goes on to state that "the *final* responsibility for deciding" residual functional

7

alone does not establish disability. Instead, an ALJ must look for opinions on functional limitations that provide information on what a claimant is physically or mentally able to do in spite of his impairments.

The doctor's statement in the November 2008 letter that "[t]hese conditions affect [Plaintiff's] employability" does not assist the ALJ to determine Plaintiff's RFC and, therefore, whether Plaintiff is, in fact, disabled. The Court finds no error in the ALJ's determination not to give any weight to this opinion. Similarly, the ALJ did not err when he declined to accept Dr. Runde's opinion (in the November 2010 letter) that Plaintiff is "chronically disabled," that Plaintiff's conditions (of scoliosis and anxiety disorder with panic attacks) "prevent him from any form of work" (R. 933) or other similar statements found in Dr. Runde's reports.

**b. August 2010 residual functional capacity report and February 2011 letter**

Dr. Runde's August 2010 residual functional capacity report opines that Plaintiff's anxiety disorder causes him to be unable to focus and stay on task and he has difficulty working with others; these conditions "prevent him from any form of work, specifically sedentary work." (R. 933.) In addition, he stated that Plaintiff's pain and fatigue would require regular breaks totaling more than one hour in an eight-hour day; any extreme environmental factor causes Plaintiff to have anxiety and difficulty staying on task; and because of his back pain, he is unable to lift, sit, or stand for prolonged periods of time. (R. 934.) Dr. Runde opined that Plaintiff's impairments would cause him to be absent from work more than three times a month. (R. 935.) In a February 2011 letter responding to questions from the ALJ, Dr. Runde explained that his opinions were based on Plaintiff's subjective statements but "over the past four years I have had numerous encounters [with Plaintiff] which have created my opinion of his status. I believe Mr. Seymour to be credible with respect to his subjective complaints." (R. 953.)

---

capacity (ability to work—and so whether the applicant is disabled) "is reserved to the Commissioner." [20 C.F.R.] § 404.1527(e)(2) (emphasis added). And "we will not give any *special* significance to the source of an opinion on issues reserved to the Commissioner." [20 C.F.R.] § 404.1527(e)(3) (emphasis added).
*Bjornson*, 671 F.3d at 647-48.

The ALJ concluded that the opinions stated in the RFC report and February 2011 letter merited "very little weight" (R. 30) because (1) the letter and RFC failed to support the conclusions with a suitable medical opinion; (2) the doctor did not indicate specific functional deficits caused by Plaintiff's impairments; (3) the doctor's opinion that Plaintiff is incapable of sedentary work is an administrative finding beyond the scope of the doctor's expertise; and (4) none of the evidence cited by the doctor (from his treatment records and tests) contained objective findings that Plaintiff was as limited as the doctor opined. In addition, the ALJ stated that because Dr. Runde acknowledged that he had based his conclusions primarily on Plaintiff's subjective statements, the ALJ gave "very little weight" to the doctor's opinions based on Plaintiff's "poor credibility at the hearing and throughout this matter." (R. 30.)

Plaintiff contends that the ALJ's reasons for rejecting Dr. Runde's opinions are inadequate. First, Plaintiff contends that Dr. Runde did, in fact, provide specific functional limitations, including that Plaintiff would miss work one to two days per week due to his condition; he would need to rest or lie down several times during the day due to back pain; he would need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and he was unable to perform sedentary work. Second, Plaintiff contends that Dr. Runde's statements were supported by objective medical evidence. Third, Plaintiff contends that Dr. Runde was not required to establish specific limitations with particularized objective findings. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("The etiology of pain is not well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be read off from a medical report." (citation and internal quotation marks omitted)). Finally, Plaintiff contends that even if the ALJ properly determined that Dr. Runde's opinions did not merit controlling weight, the ALJ failed to determine what weight he gave those opinions and why.

The Court agrees that Dr. Runde's statements were supported by some medical evidence, including the doctor's own clinical notes, the notes forwarded to him by specialists, and diagnostic evidence including a bone scan and MRI results showing scoliosis, lumbar degenerative changes, and a possible compression fracture. The ALJ's decision focuses primarily on Plaintiff's degenerative disc disease and only briefly mentions Plaintiff's scoliosis,

9

describing Plaintiff's scoliosis simply as "two well-balanced curves" (R. 26), as if the fact that they are balanced mitigates the debilitating effect of Plaintiff's condition.  Dr. Runde described the chronic pain Plaintiff experiences due to his scoliosis and discussed at length the treatment Plaintiff has undergone and his current condition.  Although the ALJ acknowledged that Plaintiff's "most severe limitations appear to be caused by his physical impairment" (R. 31), the ALJ did not provide much discussion of Plaintiff's scoliosis.  In the absence of a discussion of the ALJ's consideration of Plaintiff's scoliosis, the Court cannot assess whether the ALJ properly considered it.

The Court also finds that the ALJ gave too much weight to Dr. Runde's statement that his opinions were based on Plaintiff's subjective statements and failed to consider the context.  Although Dr. Runde stated that his opinions were based on Plaintiff's subjective statements, he went on to say that "over the past four years I have had numerous encounters in the office and over the phone with this patient which have created my opinion of his status."  (R. 953.)  This statement indicates that the doctor has, during a period of at least four years, independently corroborated Plaintiff's subjective complaints, thus undermining the ALJ's reasoning.

On remand, the ALJ should reconsider his treatment of Dr. Runde's opinions in light of the concerns described above.  Although reconsideration might not result in a decision to give controlling weight to Dr. Runde's opinions, the ALJ should explain what weight he gives the opinions and why.

### 3.  Mr. Hunter's Opinions

Mr. Hunter, Plaintiff's long-time counselor, also completed a mental functional capacity report in which he opined that Plaintiff had mild limitations in daily living activities; extreme limitations in social functioning; moderate limitations in concentration, persistence, and pace; and one or two episodes of decompensation in the last twelve months.

The ALJ considered Mr. Hunter's report but declined to give it "any substantial weight." (R. 31.)  Specifically, the ALJ stated that Plaintiff's "ability to function independently, i.e., he manages to get out whenever he needs to and mix with others as necessary for daily and medical

needs" (R. 31), shows that his social functioning is not extremely limited as opined by Mr. Hunter. In addition, the ALJ concluded that Plaintiff's performance in the mental status examination and his "admitted daily activities of playing video games, photography, reading, watching TV and playing musical instruments" indicate that he was only mildly limited in the area of concentration, persistence, and pace, in contrast to Mr. Hunter's opinion that he has moderate limitations in this area. Plaintiff contends that this conclusion is insupportable because Plaintiff's condition varies so much from day to day. Plaintiff also notes that the Seventh Circuit has criticized ALJs for extrapolating conclusions from daily activities. *See Bauer v. Astrue*, 532 F.3d 606, 608-09 (7th Cir. 2008) (criticizing the ALJ for failing to consider that a claimant might have good and bad days). Without any explanation of the ALJ's reasoning regarding Plaintiff's good and bad days, the Court cannot evaluate the propriety of his rejection of Mr. Hunter's opinion about Plaintiff's limitations.

The ALJ also rejected Mr. Hunter's statement that Plaintiff had experienced episodes of decompensation, stating that there was nothing in the record that indicated such episodes had occurred. This statement is not accurate; Dr. Lee also reported that Plaintiff had experienced episodes of decompensation. On remand, the ALJ should inquire regarding these purported episodes of decompensation before using them as a basis to reject Mr. Hunter's opinion.

Mr. Hunter, a counselor, is considered a nonmedical source; thus, his report cannot be used to establish the existence of an impairment. SSR 06-3p. "However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. Here, Mr. Hunter has seen Plaintiff every one to three weeks since August 2005 (R. 959), and his 2011 report provides information about Plaintiff's ability to relate to others in a work setting that is generally consistent with other evidence in the record regarding Plaintiff's limitations in his ability to work in conjunction with or near others and/or take direction from supervisors. The ALJ did not discuss this portion of Mr. Hunter's report, explaining only his disagreement with Mr. Hunter's opinion regarding Plaintiff's limitations in his social functioning and concentration, persistence, and pace.

11

On remand, the ALJ should reconsider Dr. Hunter's opinions in light of these comments.

### C.  State Agency Reviewing Expert's Opinion of Plaintiff's Social Limitations

Plaintiff next argues that the ALJ did not appropriately assess the opinion of Dr. Patricia Beers, the State Agency reviewing expert, regarding Plaintiff's social limitations.  Dr. Beers diagnosed Plaintiff with major depression and panic disorder (R. 503, 505) and concluded that Plaintiff had mild restrictions in activities of daily living and concentration, persistence, and pace, and moderate difficulties in maintaining social function (R. 510).  Dr. Beers also opined that Plaintiff is "capable of SGA in a socially restricted vocational setting."  (R. 512.)

The ALJ rejected Dr. Beers's opinion to the extent it implied that Plaintiff's depression was severe, but found the rest of the opinions persuasive "to the extent that they are consistent with the residual functional capacity finding in this decision."  (R. 28.)  Plaintiff challenges this on the ground that the ALJ's residual functional capacity did not reflect Dr. Beers's finding that Plaintiff was markedly limited in his ability to interact appropriately with the general public and the ALJ did not explain why.

As noted above, Dr. Beers did, in fact, find that Plaintiff had "moderate" limitations in social functioning.  That rating reflected a composite of Dr. Beers' specific findings that Plaintiff had marked limitation in the ability to interact appropriately with the general public, mild limitations in the ability to ask simple questions and maintain socially appropriate behavior, and moderate limitations in the ability to accept instructions and respond appropriately to supervisors and the ability to get along with coworkers or peers. (R. 523.)  The ALJ's RFC limited Plaintiff to only occasional contact with the public, coworkers, and supervisors.  This limitation is consistent with Dr. Beers's ratings on Plaintiff's limitations and her opinion regarding Plaintiff's ability to work.  Accordingly, the Court concludes that the ALJ did not err in his consideration of Dr. Beers's opinions.

### D.  VE Testimony and the *Dictionary of Occupational Titles*

Plaintiff next argues that Court must remand the case because the ALJ failed to resolve an obvious conflict between the VE testimony and the *Dictionary of Occupational Titles* (DOT),

namely, that the VE testified regarding the sit/stand option, which is not part of the DOT.  Under SSR 00-4p, "the ALJ has an affirmative responsibility to ask if the VE's testimony conflicts with the DOT, and if there is an apparent conflict, the ALJ must obtain a reasonable explanation." *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009) (citations and internal quotation marks omitted).

The Seventh Circuit has stated that "[b]ecause the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT."  *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008).  Thus, the ALJ did not err by failing to obtain an explanation for the purported conflict.  And even if the ALJ had erred by failing to comply with SSR 00-4p, that error was harmless because "the ALJ was entitled to rely on other, unchallenged VE testimony."  *Id*.  Here, the VE testified that there were several jobs available with a sit/stand option.  Plaintiff's counsel did not object to this testimony and did not cross-examine the VE on this issue.  As a result, the ALJ was entitled to rely on the unchallenged testimony regarding the sit/stand option.  *See id.*

Plaintiff next contends that the ALJ erred when he mistakenly stated in his decision that the VE "testified that the sit/stand option is not found in the DOT, but is based upon her own personal observation, study, and experience in the job market."  (R. 33.)  The Court has reviewed the transcript and cannot find any such statement by the VE; therefore, Plaintiff is correct that this statement by the ALJ is inaccurate.  Nevertheless, it is well understood that the DOT does not include the concept of a sit/stand option, and courts routinely acknowledge that a VE's testimony regarding the sit/stand option is based on the VE's experience.  *See Merritt v. Astrue*, 872 F. Supp. 2d 742, 746 (N.D. Ill. 2012) ("The sit/stand option included in the second hypothetical was the only limitation not defined in the DOT and therefore [was] based on the VE's experience."); *Miller v. Colvin*, No. 3:12-CV-390-JD-CAN, 2013 WL 3353938, at *5 (N.D. Ind. July 2, 2013) ("As the Dictionary of Occupational Titles does not cover sit/stand, the VE's answer to this last hypothetical was based on his own experience.").  Thus, although the ALJ was wrong when he stated that the VE had testified about the basis for her testimony related to the sit/stand option, that does not constitute a basis for remand under the circumstances.

Finally, Plaintiff contends that the ALJ violated SSR 00-4p because he did not ask the VE whether her testimony was consistent with the DOT. However, the Seventh Circuit has found that an ALJ's failure to inquire may be harmless error when there is no challenge to the VE's testimony about a significant number of jobs. *See Ketelboeter v. Astrue,* 550 F.3d 620, 626 (7th Cir. 2008) (holding that an ALJ's failure to ask a vocational expert if his testimony conflicted with the DOT was harmless error when the claimant could find a job as a bench hand, assembler, and office helper); *Prochaska v. Barnhart,* 454 F.3d 731, 735-36 (7th Cir. 2006) (applying harmless-error analysis to a violation of SSR 00-4p). In this case, the VE testified that 3,501 inspection jobs, 4,390 assembly jobs, and 2,004 packing jobs existed that an individual with Plaintiff's RFC could perform. Plaintiff's attorney limited his questions to other issues and did not challenge the testimony regarding the sit/stand option. Under these circumstances, the ALJ's failure to inquire pursuant to SSR 00-4p constituted harmless error.

Although the Court finds that the ALJ's failure to comply with SSR 00-4p does not constitute reversible error, on remand, the ALJ is urged to be mindful of his obligations under the Rulings.

### E. Credibility Assessment

Plaintiff next argues that the ALJ's credibility assessment contained numerous errors. The ALJ's credibility assessment stated as follows:

> [T]here are facts and inconsistencies in the record which detract from the credibility of the claimant's allegations. In the course of the claimant's mental health treatment, it was specifically noted by both Dr. Lee and Mr. Hunter that the claimant lied to each of them about using marijuana. . . In addition, the claimant has alleged throughout this case that he was limited to the amount of sitting, specifically to 30 minutes at a time. However, on the day of the hearing, after driving 90 minutes (with one break to lie down) the claimant sat for 53 minutes of the hearing, before he stood up for 2 minutes. Then he sat back down for an additional 32 minutes before the hearing ended and he got up to leave. The claimant showed no signs of distress throughout the entire hearing. In addition, the claimant has been treated by a counselor for about 5 years on a regular basis. This routine requires a 60 mile round trip by car, along with the participation in the session once there; thus, the claimant regularly engages in sitting for extended periods of time and has since he has alleged that he is disabled. The inconsistences suggest that the information provided by the claimant generally may not be entirely reliable. (R. 29.)

> The undersigned notes that the claimant has pain in his back that could reasonably be expected to cause limitations. However, the degree of symptoms and limitations alleged by the claimant due to pain are not consistent with the objective medical evidence regarding these impairments, or his functional ability, including testimony about his daily activities. His admitted activities and cognitive abilities indicate that he has the [capability] of employment at SGA levels. His demonstrated behavior in this procedure and his daily and weekly routines support that he can sit and stand for periods of time necessary to perform sedentary work. Further, although the claimant does have mental impairments, his most severe limitations appear to be caused by his physical impairment.

(R. 31 (citations to record omitted).) Based on this reasoning, the ALJ concluded that Plaintiff's complaints of total disability are not credible to the extent they are inconsistent with the ALJ's RFC. (R. 31.)

Plaintiff argues that the Court should reverse and remand this case because the ALJ failed to consider the credibility factors set forth in SSR 96-7p. Plaintiff also contends that the assessment contained the following errors: The ALJ mischaracterized some of the underlying medical evidence, which undermines the validity of the assessment; the ALJ relied too much on Plaintiff's daily activities and did not take into account Plaintiff's limitations in performing the activities, e.g., Plaintiff's need to perform tasks in small increments and with assistance; the ALJ's reliance on the fact that Plaintiff lied to his doctors about his marijuana use is not persuasive; the ALJ wrongly stated that Plaintiff's trip to his counselor required a 60-mile round trip by car when the distance was only 24 miles round trip; and the Seventh Circuit has cautioned against using personal observation when assessing credibility.

Some of these arguments are unavailing. First, in support of his contention that the ALJ improperly relied on the fact that Plaintiff lied to his doctors about his marijuana use, Plaintiff cites *McClesky v. Astrue*, 606 F.3d 351, 353 (7th Cir. 2010), in which the court recognized that an individual might understandably be reluctant to admit illegal drug use. However, the court also acknowledged that "lack of candor on this subject reveals that [the plaintiff] is willing to lie about subjects in order to promote her self-interest. Maybe drugs are not the only subject on which she is concealing information." *Id.* The case law does not support a conclusion that the ALJ is prohibited from considering a claimant's inconsistent statements about drug use.

Second, although Plaintiff notes that the Seventh Circuit has stated that it is uncomfortable with the "sit and squirm" test, *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000), SSR 96-7p expressly states that the ALJ may "consider his or her own recorded observations of the individual" as part of the credibility evaluation, so the ALJ did not err by doing so. (However, the ALJ erred in stating the miles Plaintiff drove to see his counselor, which may affect the ALJ's analysis on remand.)

Nevertheless, Plaintiff has raised some valid points. The ALJ discussed only two of the credibility factors listed in SSR 96-7p. A discussion of the effectiveness and side effects of Plaintiff's medication and treatment other than medication that Plaintiff uses or has tried would be particularly relevant to the credibility assessment in this case. The Court agrees that the ALJ's reference to "benign" degenerative changes (R. 26) in his bone scan does not accurately portray Plaintiff's scoliosis. Similarly, the record shows that Plaintiff did not have a full range of lumbar motion although there may be some references to full range of motion in some areas.

The Court notes that an ALJ may rely on daily activities when considering credibility, and Plaintiff's activities appear to be extensive. However, in the absence of any explanation by the ALJ, the Court cannot determine how the ALJ reconciled his reliance on Plaintiff's activities with Plaintiff's testimony that he performed those activities in small increments and with assistance at times and that he has good and bad days. *See Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002) (An ALJ is required to build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.")

When considering Plaintiff's credibility on remand, the ALJ should explain his reasoning regarding the above issues.

### F. Onset Date

If, on remand, the ALJ determines that Plaintiff is entitled to disability, the Court also asks the ALJ to address the question of when that disability began, as the record is unclear on this issue. For example, Dr. Runde stated in the RFC assessment that Plaintiff's functional

limitations began in October 2009. (R. 935.) In his February 2011 letter, he stated that Plaintiff's functional limitations described in the RFC commenced intermittently in June 2007 and more permanently in August 2008. (R. 953.) Dr. Lee opined that Plaintiff's marked limitations in ADL, social functioning, and concentration, persistence, and pace existed as early as January 2008. The ALJ noted that Dr. Lee did not start treating Plaintiff until September 2008 so it was unclear how Dr. Lee determined the existence of a disability before that date, particularly when the doctor had regularly described Plaintiff as stable and his mood as euthymic.

## IV.  Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (**#15**) be **GRANTED** and that Defendant's Motion for an Order Which Affirms the Commissioner's Decision (**#17**) be **DENIED**, and that this case be remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation. Furthermore, if it is determined that Plaintiff is disabled, the ALJ shall expressly address the question of when that disability began.

The Court advises the parties that any objection to this recommendation must be filed in writing with the Clerk within fourteen (14) days after service of a copy of this recommendation. *See* 28 U.S.C. 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21. Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 3rd day of February, 2014.

s/DAVID G. BERNTHAL<br>UNITED STATES MAGISTRATE JUDGE